

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-5-2002

# Nextel West Corp v. Unity

Precedential or Non-Precedential:

Docket 1-2030

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Nextel West Corp v. Unity" (2002). *2002 Decisions.* Paper 152.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/152

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<!TOF>

PRECEDENTIAL

        Filed March 5, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2030

NEXTEL WEST CORP., a Delaware Corporation d/b/a
NEXTEL COMMUNICATIONS

v.

UNITY TOWNSHIP, WESTMORELAND COUNTY,
PENNSYLVANIA, a Political Subdivision of the
Commonwealth of Pennsylvania; THE ZONING HEARING
BOARD OF UNITY TOWNSHIP

Nextel West Corp., d/b/a Nextel Communications,
Appellant

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

(Dist. Court No. 98-CV-1258)
District Court Judge: Honorable Donald E. Ziegler

Argued: October 18, 2001

Before: MANSMANN, ALITO, and BARRY, Circuit Judges.

(Filed: March 5, 2002)

CLIFFORD B. LEVINE (Argued)
ALICE B. MITINGER
Thorp Reed & Armstrong, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219

 Counsel for Appellant

JOSEPH J. BOSICK
JEANETTE H. HO (Argued)
Pietragallo, Bosick & Gordon
One Oxford Centre
301 Grant Street, 38th Floor
Pittsburgh, PA 15219

 Counsel for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge:

Nextel West Corporation ("Nextel"), a wireless telecommunications company, has attempted to gain permission from the defendants, Unity Township ("Township") and its Zoning Hearing Board ("ZHB"), to build a 250-foot radio tower on private property in the Township, which is located southeast of Pittsburgh. On appeal to this Court, Nextel argues that the Township violated the federal Telecommunications Act of 1996 ("TCA"), see 47 U.S.C. S 332(c)(7) (2000), in two ways: (1) its zoning ordinance has the "effect of prohibiting" all wireless telecommunications towers in the Township, and (2) the Township's disparate treatment of Nextel and a competitor constituted "unreasonable discrimination" under the TCA. 47 U.S.C. S 332(c)(7)(B)(i). The District Court held that the case was mooted by an amendment of the original zoning ordinance and therefore granted the Township's motion for summary judgement on all claims. Because we hold that this case is not moot, we reverse and remand for adjudication of the merits of Nextel's two TCA claims.

2

I.

To create a wireless network that provides uninterrupted cell phone service for a given geographical region, a telecommunications company must stitch together a patchwork of transmission cells. An antenna is located in the approximate center of a cell and the antenna transmits wireless signals to and from cell phone users in that cell. Because an antenna transmits signals on a line-of-sight basis, it is typically mounted on a tower or other tall structure. The perimeter of each cell is shaped by the topography surrounding the antenna. Where the terrain is flat, a cell is circular and several miles in diameter. But the hilly terrain of western Pennsylvania distorts the shape and shrinks the size of a cell. The gaps these distortions create complicate the process of stitching together cells to blanket the targeted region.

Because each wireless company is licensed by the Federal Communications Commission ("FCC") to use a different radio frequency, and because different companies use different transmission technologies, each wireless provider must deploy its own network of antennae, spaced at intervals so that their cells interlock. Providers usually prefer to mount an antenna on a existing building or telecommunications tower. When no suitable buildings or towers are located in the area where an antennae is needed, a company must build a new tower to provide wireless service in that area. For a wireless provider, the absence of coverage over a high-use area (e.g. , a population cluster or major road) creates legal and commercial problems. In order to retain its FCC license for a region, a licensee must achieve quality coverage (defined by the industry as the absence of "dropped" calls) for a certain percentage of the region's population within a certain number of years after the license was granted; if the licensee fails to do so, it will forfeit its entire license. See 47 C.F.R. S 90.685(d) (2002). In addition, the ability to provide uninterrupted coverage in high-use areas is considered essential for a wireless company to remain competitive in that region.

In this case, Nextel had a significant gap in service along

3

a segment of U.S. Route 30, Unity's only major highway.[1] In that area, there were no towers or other tall structures on which Nextel could co-locate a "viable" antenna, i.e., an antenna that would cover Nextel's gap along Route 30. Nextel therefore undertook a thorough search for a location where it could place a viable tower.

The Township's original ordinance permitted telecommunications towers, inaptly categorized as"utility substations," only in manufacturing zones, and it limited these towers to 75 feet in height, well below the industry average in that region.[2] See App. at 1110. The parties agreed that no tower built in any of the manufacturing districts would be viable.[3] Instead, Nextel identified a nearby 38-acre farm where a viable tower could be located. The farm site was in a residential zoning district, just beyond the edge of a manufacturing district. The site was near Route 30 and would adequately cover the gap. Moreover, it did not appear that this location would present any aviation problem.

Nextel applied to the ZHB for a variance to locate a tower on the farm site. In July 1998, the ZHB denied the variance. Nextel also filed an exclusionary challenge with the ZHB attacking the ordinance's validity under the TCA and state law. Nextel contended that the ordinance effectively prohibited wireless telecommunications facilities in the Township. When the ZHB failed to respond, Nextel's exclusionary challenge was deemed denied. In September 1998, days after Nextel's exclusionary challenge was denied, the Township settled a lawsuit filed by Sprint, a

_____

1. A gap in service, i.e., an area not covered by wireless signals, results
in dropped calls as callers enter the uncovered area.

2. The average height of new cell towers in western Pennsylvania region
is allegedly 100-150 feet. App. at 1059, 1064.

3. Most districts were too close to the airport. Any tower in the airport's
vicinity would require approval from the Federal Aviation Administration ("FAA"), which was very unlikely, considering the height the tower would need to be to cover the service gap. See App. at 498-99. The remainder of the manufacturing districts were veiled from U.S. Route 30 by hills, and thus transmissions from a tower there would be topographically blocked.

4

competitor of Nextel, after a state court reversed the ZHB's denial of Sprint's variance. See Sprint Spectrum v. Unity Township, 80 Westmoreland L.J. 53 (Pa. Ct. Common Pleas 1998). Sprint had sought to build a cell tower in a manufacturing district to cover a service gap in its network, but the proposed height of the tower (250 feet) far exceeded the ordinance's limit. In accordance with the settlement agreement, Sprint withdrew its exclusionary challenge against the ordinance, and the Township issued a variance that allowed Sprint to build its 250-foot tower.

Nextel timely filed two TCA actions based on these two denials from the ZHB, and the District Court consolidated the two actions. While this litigation was pending before the District Court, the Township amended its original ordinance in February 1999 in three ways. First, the amended ordinance allowed wireless telecommunications towers in two additional zoning districts (agricultural and conservation, but still not residential). Second, it permitted towers as a "special exception" if the site in question satisfied certain criteria. See App. at 1201-06. Third, it raised the maximum height of towers in manufacturing districts to 180 feet and in agricultural and conservation districts to 150 feet (plus 50 feet more if the setback was sufficient). Nextel argues, however, that the criteria to qualify a tower site for a special exception are so burdensome and the additional districts so remote from Route 30 that, in actuality, Nextel's ability to obtain approval for a viable tower was effectively unaltered by the amendment.

After the amendment, the parties filed cross-motions for summary judgment. Nextel argued that the summary judgment record showed that (1) the original ordinance was impermissibly exclusionary under state law, (2) the original ordinance violated the federal TCA by effectively prohibiting wireless telecommunications services, and (3) the Township violated the TCA by unreasonably discriminating in favor of Sprint. The District Court granted summary judgment to the Township. It held that Nextel's claims under the TCA were mooted by the 1999 amendment of the ordinance. Absent any allegation of diversity jurisdiction, the District Court found it had no supplemental jurisdiction over the

5

pendent state law claims and dismissed them without
prejudice.

II.

This appeal presents three primary issues: (1) whether
the 1999 amendment to the ordinance renders Nextel's two
TCA claims either moot or unripe, (2) whether the
ordinance has the "effect of prohibiting" wireless facilities
and thus violates the TCA, and (3) whether the Township
violated the TCA by "unreasonably discriminat[ing]" against
Nextel.4 Nextel requests an injunction directing the
Township to permit Nextel to build a 250-foot tower on the
farm site. The District Court's opinion addressed only the
first issue (mootness) and found it dispositive. We hold that
the 1999 amendment to the Township's ordinance did not
moot either of Nextel's two claims under the TCA. We
therefore remand the case to the District Court to
adjudicate the merits of Nextel's two TCA claims and any
state law claims over which supplemental jurisdiction is
appropriate.

A.

The Constitution permits a federal court to exercise
jurisdiction only over cases or controversies. See U.S.
Const., art. III. If a claim no longer presents a live case or
controversy, the claim is moot and the federal court lacks
jurisdiction to hear it. See Allen v. Wright, 468 U.S. 737,
750 (1984). This requirement must be met "through all
stages of federal judicial proceedings, trial and appellate."
Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).
If the claim is based on a statute or ordinance that is

_____

4. The TCA provides, in relevant part, as follows:

      The regulation of the placement, construction, and modification of
      personal wireless service facilities by any State or local
government
      or instrumentality thereof -- (I) shall not unreasonably
discriminate
      among providers of functionally equivalent services; and (II) shall
not
      prohibit or have the effect of prohibiting the provision of
personal
      wireless services.

47 U.S.C. S 332(c)(7)(B)(i) (emphasis added).

6

amended after the litigation has begun, the amendment may or may not moot the claim, depending on the impact of the amendment.

On the one hand, if an amendment removes those features in the statute being challenged by the claim, any claim for injunctive relief "`becomes moot as to those features."' Khodara Envtl., Inc. v. Beckman , 237 F.3d 186, 194 (3d Cir. 2001) (holding that facial constitutional challenges -- on equal protection and other grounds -- were mooted by an amendment that significantly broadened the statute's scope and thus alleviated these facial claims) (quoting Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992); see also Diffenderfer v. Central Baptist Church, 404 U.S. 412, 414-15 (1972) (holding that a facial challenge was mooted by an amendment that substantially altered the objectionable statutory provision). Similarly, if the amendment provides sufficient relief to the plaintiff, the claim becomes moot. See U.S. Dept. of Treasury v. Galioto, 477 U.S. 556, 559-60 (1986) (holding that an amendment that gave plaintiffs a new administrative remedy mooted constitutional challenges regarding equal protection and irrebuttable presumptions); Black United Fund of New Jersey, Inc. v. Kean, 763 F.2d 156, 160-61 (3d Cir. 1985) (holding plaintiff's claims were mooted by an amendment because the "raison d'etre for the injunction no longer exists," and noting that the amendment "will give plaintiff substantially the relief it sought in the district court").

On the other hand, an amendment does not moot the claim if the updated statute differs only insignificantly from the original. See Northeastern Florida Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 662 (1993) (rejecting a misinterpretation of the holding in City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283 (1982), that would permit "a defendant[to] moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect"). A claim is not mooted by the amendment if the "gravamen of petitioner's complaint" remains because, although the new ordinance "may disadvantage [plaintiffs] to a lesser degree than the old one," still "it disadvantages them in the same fundamental way." Id.; see also Coalition for the Abolition of

7

Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1313-15 (11th Cir. 2000) (holding the challenged provisions of the old ordinance "have not been sufficiently altered [by the amendment] so as to eliminate the issues raised" and that the violations alleged under the old ordinance could be reasonably expected to continue under the new ordinance); Naturist Soc'y, 958 F.2d at 1520 ("Where a superceding statute leaves objectionable features of the prior law substantially undisturbed, the case is not moot. . .. To the extent that those [challenged] features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot.").

In Khodara, we held that, although facial challenges were mooted by the amendment, the as-applied challenges were not moot because relief was still available for these claims, which the amendment had not redressed.5  See Khodara, 237 F.3d at 195-96. In Rosetti v. Shalala, 12 F.3d 1216 (3d Cir. 1993), we held the case was not mooted by the promulgation of new regulations because they gave plaintiffs "only some, not all, of the relief they sought." 12 F.3d at 1233. Although the plaintiffs had requested relief in the form of new regulations, they had also sought a

_____

5. In Khodara, we determined the mootness of plaintiff's claims according to the availability of relief after the statute was amended. After the statute was amended, the prospective declaratory and injunctive relief sought through the facial challenges was moot, but the damages sought through the as-applied challenges saved these latter claims from mootness. The plaintiff's "claim for damages for the past application [of the original statute] invests it with a continuing, concrete stake in the outcome of this litigation that has not been redressed by the passage of the [recent] Amendment." Id. at 196.

We reject the Township's mistaken argument that seizes on the existence of a claim for damages as the litmus test for mootness. The Township's contention -- because Nextel seeks only injunctive relief and not damages, the 1999 amendment moots Nextel's claims -- misinterprets our reasoning in Khodara. It was the continuing availability of relief, unredressed by the amendment, that kept the controversy alive in Khodara. Similarly, the relief requested by Nextel -- declaring the ordinance invalid and/or enjoin the Township to permit Nextel to build its farm-site tower -- remain meaningful and available after the 1999 amendment.

8

separate form of injunctive relief that was unaddressed and was therefore not mooted by these new regulations. See id.

1. Claim of Prohibitive Effect. Applying this case law to Nextel's first TCA claim, we hold that the Township's amendment did not sufficiently alter the ordinance to moot the question whether Unity's ordinance effectively prohibits wireless facilities. Even though the amendment did, on its face, loosen the zoning restrictions on wireless towers, the controversy over its effect remains alive, and injunctive relief remains available. According to Nextel, both before and after the amendment, the ordinance effectively prohibited Nextel from locating a tower in any viable location. Nextel argues that the changes introduced by the amendment -- an increase in height limits, the addition of two types of zoning districts, and the special exception procedure -- still provided no feasible location for a tower that could cover the gap in service. Under the Khodara analysis, the challenged feature of the original ordinance (i.e., its allegedly prohibitive effect) was not removed by the amendment.

In the language of Northeastern Florida Chapter , both before and after the amendment, "the gravamen" of Nextel's complaint remained: the allegedly prohibitive effect of the Township's ordinance still violated the TCA. 508 U.S. at 662. Both before and after amendment, Nextel was allegedly "disadvantag[ed] in the same fundamental way": it still cannot place a viable tower anywhere in the Township. Id. As for the continuing availability of requested relief, crucial in Rosetti, the amendment in no way redressed Nextel's request for site-specific, injunctive relief.

In holding that Nextel's TCA claims were moot, the District Court did not compare the effect of the original ordinance and the amended ordinance. It did not discuss whether and to what extent the allegedly prohibitive effect of the original ordinance had been altered by the amendment. Instead, the Court reasoned that because the amendment added something to the ordinance-- namely, criteria under which towers could be permitted as special exceptions -- Nextel's claims had become moot. See App. at 19-20. The District Court relied on Burke v. Barnes, 479 U.S. 361, 363 (1987) and Diffenderfer for the proposition

9

that a statute's expiration or repeal deprives the plaintiff of injunctive and declaratory relief. But that rule is inapplicable here, because the original ordinance was merely amended. More appropriate for these facts is the mootness inquiry from Northeastern Florida Chapter and Khodara, i.e., whether the amendment sufficiently altered or removed the challenged aspects of the original legislation to moot the underlying claims.

2. Claim of Unreasonable Discrimination. In addition to its claim that the Township's ordinance violated the TCA by effectively prohibiting cell towers, Nextel also claimed that the defendants violated the TCA by discriminating against it and in favor of a competitor, Sprint. We hold that this claim is also not moot. The District Court failed to make a distinction between Nextel's two separate TCA claims. The District Court's opinion did not explain how a change in the text of an ordinance could moot a claim of past discriminatory conduct.

Nextel seeks a remedy for the Township's decision to deny its variance request, while granting a similar variance to Sprint. The variance permitted Sprint to build its tower in a manner otherwise impermissible under either the original or amended ordinance. Even if the amendment had mooted Nextel's first claim by purging the ordinance of its allegedly prohibitive effect, the amendment in no way altered Nextel's claim of unreasonably discriminatory conduct by the Township. This controversy is very much alive.

B.

Although the District Court did not discuss ripeness, the appellees have urged us to affirm the decision of the District Court on the alternative ground that Nextel's claims are not ripe. We are convinced, however, that Nextel's TCA claims are ripe for adjudication on the merits by the District Court. We reject the Township's argument that Nextel's claims are unripe because Nextel has not yet applied for a permit or variance under the amended ordinance. We find the Township's position -- that any amendment to a zoning ordinance forces an applicant to

10

reapply in order for its TCA claim to ripen -- extreme and contrary to precedent.

The Township's position would enable a municipality to trap telecommunications plaintiffs in a litigation limbo between mootness and unripeness, frustrating the TCA's purpose. Under the Township's approach, as long as a municipality passed an insignificant amendment after each TCA action was filed, it could block telecommunications plaintiffs' access to court, even though expedited review in federal court is the benefit Congress expressly intended to confer on wireless providers by enacting the TCA. See 47 U.S.C. S 332 (c)(7)(B)(v). The Supreme Court squarely rejected this theory when discussing mootness in Northeastern Florida Chapter. See 508 U.S. at 662 (rejecting a rule that would permit "a defendant [to] moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect"). We thus hold that Nextel's claims are ripe.

C.

On remand, the District Court must weigh the merits of two TCA claims that require separate analyses but work together to effectuate the purpose of the statute. 6 First, the District Court must determine whether the ordinance had

_____

6. The federal Telecommunications Act of 1996 seeks to create "a pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunication and information technologies and services to all Americans by opening all telecommunications markets to competition." H.R. Conf. Rep. No. 104-458 at 113 (1996), reprinted in 1996 U.S.C.C.A.N. 124. It seeks to balance this goal against the legitimate concerns of state and local governments in regulating the siting of wireless facilities. See H.R. Conf.
Rep. No. 104-204, at 94-95 (1995), reprinted in 1996 U.S.C.C.A.N. 61.

Though Nextel makes two separate claims under the TCA, the two provisions from which these claims derive -- effectively prohibit and unreasonably discriminate -- work together to promote the expansion of wireless telecommunications networks by protecting telecommunications plaintiffs.

The first provision (forbidding ordinances which effectively prohibit wireless facilities) aims to open up municipalities to wireless providers generally. The second provision (against unreasonable discrimination) seeks to ensure that, once the municipality allows the first wireless provider to enter, the municipality will not unreasonably exclude subsequent providers who similarly wish to enter and create a competitive market in telecommunications services.

a prohibitive effect on wireless facilities. Second, it must decide whether the Township unreasonably discriminated against Nextel.

1. Prohibitive effect. The TCA states that ordinances are actionable if they "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. S 332 (c)(7)(B)(i) (2000). The statute does not define what constitutes prohibitive effect, but case law provides guidance. We have interpreted the "effect of prohibiting" clause to include a situation in which a zoning ordinance causes "significant gaps" in wireless coverage, and we have suggested that a "significant commuter highway" would present such a gap. Cellular Tel. Co. v. Ho-ho-kus, 197 F.3d 64, 70 (3d Cir. 1999) (finding the phrase "effect of prohibiting" to mean "more than simply ensuring that personal wireless services are available somewhere in the relevant jurisdiction").

A recent decision by this Court involved facts similar to those now before us.7 In APT Pittsburgh Ltd. Partnership v. Penn Township, 196 F.3d 469 (3d Cir. 1999), we adopted a two-prong test to determine whether an ordinance had the prohibitive effect that the TCA forbids.8  See 196 F.3d at 480-81. To satisfy the first prong, "the provider must show that its [proposed] facility will fill an existing significant gap ... in the service available to remote users." Id. at 480. We defined this prong as requiring a gap from a user's perspective, rather than a particular provider's perspective. Thus, this prong focuses on whether any provider is covering the gap, instead of whether the gap exists only in, for example, Nextel's service. A provider must "include evidence that the area the new facility will serve is not already served by another provider."9  Id. In the present

_____

7. The wireless provider suffered from a gap in coverage along a hilly township's major highway corridor. It unsuccessfully sought a variance to locate a tower in a rural area (zoned residential). A zoning amendment then restricted wireless telecommunications towers to three manufacturing districts, none of which were technologically feasible and available for the provider. See APT Pittsburgh , 196 F.3d at 472.

8. The test is also employed in Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 639 (2d Cir. 1999).

9. However, if an applicant is denied a permit to cover an area when other providers have been approved, this may violate a different

12

case, the relevant testimony on this issue is scant and conclusory, but it suggests that a gap existed for all providers and not only Nextel.10 In oral argument, counsel for Nextel asserted that no provider covers this gap but did not refer to any evidence. On remand, the District Court should make a factual determination as to whether this service gap existed for all or for Nextel alone.

The second prong of the prohibitive-effect test in APT Pittsburgh requires the telecommunications plaintiff to show "that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that denial sought to serve." Id. The court offered examples of a good-faith effort to find and evaluate less intrusive alternatives: consideration of other sites, other system designs, other tower designs, existing structures, etc. See id. Whether the farm site is the least intrusive means to fill the gap in service is a decision for the District Court on remand. We note that Nextel put forward testimony suggesting that its proposal is relatively unintrusive.11 The

_____

provision in the TCA: unreasonable discrimination. Both the Willoth and APT Pittsburgh courts note that, even if a particular provider's gap is already serviced by another provider, "the TCA may invalidate the denial of a variance [to the new entrant] if it has the effect of unreasonably discriminating between providers." APT Pittsburgh, 196 F.3d at 480 n.8.

10. According to the affidavit of Nextel's expert witness, Mr. Monfredi (an
outside consultant and engineer) concluded that, after conducting tests using multiple sites and frequencies, "no licensed provider of wireless telecommunications services, regardless of the frequency at which it operates, can provide functional service to the Unity Corridor and to the Unity Communities if such carrier is required to strictly comply with either the 1998 Ordinance or the Subsequent [1999] Ordinance." App. at 1379-80.

The Township did not refute this statement with any evidence. Instead, it objected that Monfredi's tests insufficiently explore possibilities under
the amendment's increased height allowances.

At minimum, the record shows that not a single cell tower has been permitted in the Township under the ordinance. The sole tower (Sprint's) was built pursuant to a variance from limits imposed by the ordinance, granted only as part of a settlement. See App. at 1188, 1191.

11. Nextel's expert witness stated that "where collocation on existing structures is not feasible, it is commonplace for municipalities to prefer

13

record lacks a direct response from the Township regarding intrusiveness; instead the Township referred (but did not commit itself) to an alternative proposal to build two or three shorter towers.12

2. Unreasonable discrimination. Independent of Nextel's claim of prohibitive effect, Nextel makes a claim of unreasonable discrimination under the TCA. The TCA requires that the "regulation of the placement, construction, and modification of personal wireless service facilities by [local governments] ... shall not unreasonably discriminate among providers of functionally equivalent services." 47 U.S.C. S 332(c)(7)(B)(i). Another two-prong test emerges from this provision. See APT Pittsburgh Ltd. P'ship v. Lower Yoder Township, 111 F. Supp. 2d 664, 674-75 (W.D. Pa. 2000). In this analysis, the first prong asks whether the relevant providers are "functionally equivalent." 47 U.S.C. S 332(c)(7)(B)(i). If they are, then the second prong asks whether the governmental body "unreasonably discriminate[d] among providers." Id.  In the instant case, the record clearly shows that Sprint and Nextel are functionally equivalent.13 On remand, therefore, the District Court should examine whether the Township's discrimination against Nextel and in favor of Sprint was reasonable.

_____

the construction of a single tower to multiple towers. This preference holds even if the single tower must be built to a greater height than would be necessary with additional sites." App. at 1387-88.

12. Nextel's expert witness testified that the use of multiple sites "has many limitations that make it impractical." App. at 1382.

13. We think the equivalency of function relates to the telecommunications services the entity provides, not to the technical particularities (design, technology, or frequency) of its operations. The TCA clearly does not force competing wireless providers to adopt identical technology or design nor does it compel them to fit their networks of antennae into a uniform, rigid honeycomb of interlocking cells. Indeed, the FCC's assignment of a different frequency and signal strength to each licensee renders such uniformity impossible. In this region, Sprint and Nextel provide the same service-- personal wireless communications services to remote users -- and therefore are functionally equivalent.

14

To preserve the ability of local governments and zoning boards to take into account the uniqueness of land, the TCA "explicitly contemplates that some discrimination ... is allowed. Any discrimination need only be reasonable." AT&T Wireless PCS, Inc. v. City Council of Virginia Beach , 155 F.3d 423, 427 (4th Cir. 1998); see also Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 638 (2d Cir. 1999). In a footnote in APT Pittsburgh, we stated that relief under the TCA's discrimination provision "will require a showing that the other provider is similarly situated, i.e., that the`structure, placement or cumulative impact' of the existing facilities makes them as or more intrusive than the proposed facility." 196 F.3d at 480 n.8. Discrimination may be impermissible where a municipality favors one provider by permitting it to locate in a particular area at the exclusion of others, thereby creating unfair competitive advantage. See Western PCS II, Corp. v. Extraterritorial Zoning Auth., 957 F. Supp. 1230, 1237–38 (D.N.M. 1997).

The record before us is insufficient to determine conclusively whether Sprint and Nextel were indeed similarly situated and whether the Township's discrimination was unreasonable. Thus far, Nextel has shown strong similarities between the two situations. Initially, both Sprint and Nextel had a service gap in the Township, both proposed to build a 250-foot tower, both were denied a variance, both appealed the ZHB's denial, and both filed exclusionary challenges against the Township. However, after the Court of Common Pleas of Westmoreland County reversed the denial of Sprint's variance, the Township decided to settle with Sprint. Pursuant to the agreement, the Township gave Sprint the site-specific relief it requested (a variance to build its 250-foot tower) and Sprint withdrew its exclusionary challenge. By contrast, Nextel received no variance and no explanation as to why its exclusionary challenge was denied only days before the Township settled with Sprint. If, on remand, the District Court can find no reasonable basis for this discrimination, then Nextel should prevail on this claim.

III.

For the reasons explained above, the order of the District Court granting summary judgment in favor of the Township

15

is REVERSED and the case is remanded for three fact-specific determinations: (1) whether the service gap was suffered by all wireless providers or only Nextel, (2) whether erecting a tower at the farm site proposed by Nextel was the least intrusive means for covering the gap in service along U.S. Route 30, and (3) whether the Township's discrimination between Nextel and Sprint was unreasonable. If the District Court finds that no provider was covering the service gap and that the farm site was the least intrusive means of covering that gap, or it finds that the Township's discrimination was unreasonable, then Nextel is entitled to remedies available under the TCA.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

16