

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2003

# Omnipoint Comm Entr v. Zoning Hearing

Precedential or Non-Precedential: Precedential

Docket 02-2194

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Omnipoint Comm Entr v. Zoning Hearing" (2003). *2003 Decisions.* Paper 780.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/780

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed February 12, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2194

OMNIPOINT COMMUNICATIONS
ENTERPRISES, L.P.,
    Appellant

v.

ZONING HEARING BOARD OF
EASTTOWN TOWNSHIP

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 99-cv-2080
Magistrate Judge: The Hon. Jacob P. Hart

Argued: December 19, 2002

Before: SLOVITER, McKEE, and ROSENN, Circuit  Judges.

(Filed: February 12, 2003)

Paul J. Lawrence, Esq. (Argued)
Jay Carlson, Esq.
PRESTON GATES & ELLIS
701 Fifth Avenue
Suite 5000
Seattle, WA 98104-7078

James C. Dalton, Esq.
Christopher H. Schubert, Esq.
RILEY RIPER HOLLIN &
 COLAGRECO, P.C.
240 Daylesford Plaza
P.O. Box 568
Paoli, PA 19301-0568

 Counsel for Appellant

Andrew D. H. Rau, Esq. (Argued)
GAWTHROP, GREENWOOD &
 HALSTED
A Professional Corporation
119 North High Street
West Chester, PA 19381-0562

Paula Tripodi Kaczynski, Esq.
HOLSTEN & ASSOCIATES
One Olive Street
Media, PA 19063-3301

Counsel for Appellee

OPINION OF THE COURT

ROSENN, Circuit Judge:

This case raises several important questions concerning the burgeoning wireless telecommunications industry and the interpretation and application of the Telecommunications Act, 47 U.S.C. S 151 et seq. (TCA). Omnipoint is a wireless telecommunications provider that claims that there is a gap in the wireless telecommunications services available to remote users in Easttown Township, Pennsylvania. Omnipoint sued the Zoning Hearing Board (ZHB or Zoning Board) in the United States District Court for the Eastern District of Pennsylvania, claiming that the ZHB violated the prohibition and anti-discrimination provisions of the TCA by denying Omnipoint's request for a variance to locate a telecommunications tower in a residential district. See 47 U.S.C. S 332(c)(7)(B)(i). Furthermore, Omnipoint alleges that

2

the ordinance under which its variance application was denied violates Pennsylvania law because it is either de jure or de facto exclusionary and fails to provide a "fair share" of Township land for telecommunications uses.

The District Court initially issued a writ of mandamus ordering the ZHB to grant a variance because the Court held that the ZHB decision relied exclusively on aesthetic concerns in its denial and not on substantial evidence supporting rejection. 72 F. Supp.2d 512 (E.D. Pa. 1999). We vacated this writ and remanded the case to the District Court for reconsideration in light of APT Pittsburgh Ltd. v. Penn Township, 196 F.3d 469 (3d Cir. 1999). See Omnipoint Communications Enterprises, L.P. v. Zoning Hearing Bd. of Easttown Township, 248 F.3d 101 (3d Cir. 2001) (Omnipoint I). On remand, Magistrate Judge Hart (MJ) denied Omnipoint's claims because he concluded that Omnipoint had failed to establish a "significant gap" or unreasonable discrimination under the TCA, or unconstitutional exclusion under Pennsylvania law. We affirm in part, vacate in part, and remand to the Magistrate Judge for further proceedings.

I.

Omnipoint is a licensed provider of wireless digital telephone communications services. As such, it uses a low power radio signal that is transmitted between a portable telephone and an Omnipoint antenna. The antenna then feeds the radio signal to an electronic device that is located nearby. In turn, that device connects the signal to an ordinary telephone line and routes it anywhere in the world. The combination of antenna and equipment is known as a cell site. Because of the low radio signal used

by Omnipoint, the range of the cell site is quite small. For example, in Easttown Township, the maximum coverage of a cell site is two miles. When a wireless communication facility (WCF) is not available to cover a specific geographic area, customers who live in or travel through that area will experience unreliable service, dropped calls, or an inability

to connect to the Personal Communication Service (PCS) network.1

Omnipoint sought to place a PCS tower in Easttown Township because of the gap in its wireless service. Omnipoint hoped to construct a 110-foot stealth flagpole designed PCS tower, 24 inches in diameter at the base and tapering to 16 inches at the top.2 The fiberglass flagpole structure is designed to incorporate the telecommunications antennae which would be invisible from the outside. For this flagpole, Omnipoint leased space on land owned by the Or Shalom Synagogue, located in an area zoned as residential. Under Easttown's zoning ordinance, a communications tower is not a permissible use in residential districts and no residential structure may be higher than thirty-five feet.3

Omnipoint applied to Easttown Township's Zoning Hearing Board for use and height variances. It also challenged the validity of the zoning ordinance under Pennsylvania law and the TCA. Omnipoint alleged that the extant ordinance prohibited or effectively prohibited wireless service in violation of the TCA. ZHB held three public hearings on the applications at which a number of local citizens complained that the stealth tower would be an eyesore. ZHB issued a detailed written decision denying Omnipoint's application and stating that the ordinance was valid under both Pennsylvania and federal law.

_____

1. PCS differs from "cellular" technology in that it allows for the digital, wireless transmission of video, text, and messaging information in addition to the transmission of voices.

2. WCFs must be mounted at a minimum height, which varies depending on the topography and vegetation of the region, the amount of service area to be covered, and other factors. The proposed tower would be located within a thirty-feet by thirty-feet enclosure, surrounded by an eight-foot high chain-link fence topped with barbed wire. See ZHB Decision, A 668.

3. At the time of Omnipoint's zoning application, the ordinance did not explicitly provide for communications towers. Easttown has since amended its ordinance to allow cellular communications facilities as a conditional use in business and multi-family conditional use districts. See 72 F. Supp.2d at 514 n.2.

The District Court granted Omnipoint's motion for summary judgment in part and ordered ZHB to grant Omnipoint's application. 72 F. Supp.2d 512 (E.D. Pa. 1999).4 We vacated that decision. On remand, the parties consented to have the case proceed in a bench trial before the U.S.M.J. See 28 U.S.C. S 636(c); Fed. R. Civ. P. 73.5 The parties supplemented the record with expert reports and testimony regarding telecommunications services in Easttown. Omnipoint's principal witness, radio frequency engineer Paul Dugan, supervised drive tests in which approximately six hundred forty actual calls were made using eight cell phones of various providers. Dugan asserted that a signal strength of "negative 85 dbm" was necessary for reliable service.6 On April 1, 2002, the MJ entered judgment in favor of ZHB. See 189 F. Supp.2d 258 (E.D. Pa. 2002). The MJ found that Omnipoint had failed to establish a correlation between the negative 85 dBm standard and users' actual ability to access the national telephone network. The MJ placed significant weight on his finding that mobile phones other than Omnipoint's experienced problems only 1.96% of the time in Easttown. See 189 F. Supp.2d at 265. He also concluded that the ordinance was not exclusionary. Omnipoint timely appealed.7

---

4. The District Court did not rule on Omnipoint's state law claims or its claim that the ZHB's decision violated 47 U.S.C.S 332(c)(7)(B)(i)(II) by prohibiting wireless service. Omnipoint's federal suit also included a civil rights claim under 42 U.S.C. S 1983 which Judge Katz denied because he ruled that the TCA's remedial scheme was sufficiently comprehensive to infer Congress' intent to foreclose S 1983 remedies. See 72 F. Supp.2d at 517. Judge Katz also found that Omnipoint had not shown a substantive due process violation. Id.

5. This case involves a mixture of federal and state claims. The federal claims arise under the TCA. The Magistrate Judge had jurisdiction over these claims pursuant to 28 U.S.C. S 1331. The Magistrate Judge also had jurisdiction to resolve Omnipoint's state statutory and constitutional challenges to the ordinance pursuant to 28 U.S.C.S 1367(a). See Omnipoint I, 248 F.3d at 108 n.5.

6. Omnipoint has not cited any Federal Communications Commission standard for call completion rates. See 189 F. Supp.2d at 264.

7. The MJ's April 1, 2002 decision was a final order for the purposes of 28 U.S.C. S 1291.

II.

In Penn Township, we established a two-prong test to determine if the decision of a local zoning authority has "the effect of prohibiting the provision of personal wireless services." 47 U.S.C. S 332(c)(7)(B)(i)(II). A service provider must first "show that its facility will fill an existing significant gap in the ability of remote users to access the national telephone network." Penn Township , 196 F.3d at 480. If this burden is met, the provider must still prove

"that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve." Id.

We now turn to the first prong of that test to determine whether there is a significant gap in the ability of remote users to access the national telecommunications network. We focus, therefore, on the service available to all remote users of all services in the specific area where Omnipoint asserts there is a significant gap in reliable service offered to remote wireless users by the existing providers. There must be a gap from the users' perspective, rather than from a particular provider's perspective. See Nextel W. Corp. v. Unity Township, 282 F.3d 257, 265 (3d Cir. 2002). A gap in the service provided by one provider is not sufficient for a prohibition of service claim under 47 U.S.C. S 332(c)(7)(B)(i)(II) if the telecommunications needs of users in the community as a whole are served.

Regrettably, the MJ misapplied the Penn Township test here.[8] The relevant figure to be analyzed in determining whether there is a significant gap is a consideration of all the existing remote users in the southern area of Easttown Township. Dugan testified: "I know without question that this area in Southern Easttown Township within the footprint of the proposed facility is currently lacking coverage." A consideration of all users must include existing Omnipoint users at the time of the inquiry. Omnipoint is not a newcomer: it is already an existing licensee in Easttown Township. Omnipoint has an existing

_____

8. We review the Magistrate's legal conclusions under a plenary standard. See Warner-Lambert Co. v. BreathAsure, Inc., 204 F.3d 87, 89 n.1 (3d Cir. 1999).

facility in the business district. This is not a case where a newcomer seeks to have its potential customers calculated as existing users. On the contrary, it is a provider who seeks to expand its service to existing customers by remedying a significant gap in the southern area of Easttown Township.

The proper test, therefore, for determining whether there is a significant gap is to look at all wireless telephone users, including the plaintiff 's customers. Instead, the MJ looked only at non-Omnipoint users and found that non-Omnipoint users experienced problems only 1.96% of the time in Easttown Township. See 189 F. Supp.2d at 265. Based on this finding, the Magistrate Judge erroneously concluded that Omnipoint had failed to carry its burden of proving a significant gap.

The relevant figure in the Penn Township analysis is the aggregate, including Omnipoint users and including calls outside Easttown Township, but within each provider's WCF 's coverage area. Under the proper standard, the MJ's

1.96% figure understates the actual call failure rate. Omnipoint places the number at approximately 5.5%. [9]

_____

9. We reach this conclusion even though Omnipoint raised this argument for the first time in its Reply Brief. Generally, we do not consider arguments raised for the first time in a Reply Brief, but we do have the discretion to do so in exceptional circumstances. See Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 204-05 n.29 (3d. Cir. 1990). Here, since the Magistrate Judge erred in ignoring Omnipoint users in ascertaining whether there was a significant gap in the Township, we will consider Omnipoint's argument to avoid a miscarriage of justice. Cf. Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1571 (1st Cir. 1994) (Courts of Appeals may consider arguments raised for the first time in a Reply Brief if the arguments are "so compelling as virtually to insure the appellant's success" or if the arguments "must be ruled on to avoid a miscarriage of justice"); see also Dufrene v. Browning-Ferris, Inc., 207 F.3d 264, 268 (5th Cir. 2000) (Courts of Appeals may review for plain error, where the error is "clear" or"obvious" and affects "substantial rights."); United States v. Wilson, 962 F.2d 621, 627 (7th Cir. 1992) (Courts of Appeals may consider an argument raised for the first time in a Reply Brief when an issue is serious and was overlooked by all concerned). In this case, the forfeited argument affects the fairness, integrity, and public reputation of the judicial proceedings. Cf. Dufrene, 207 F.3d at 268. Easttown Township will have adequate opportunity to respond on remand to the factual question of whether Omnipoint can show a significant gap under the correct legal standard.

7

Thus, Omnipoint may be able to carry its burden of showing a significant gap in service. Cf. Cellular Tel. Co. v. Zoning Bd. of Adjustment of Harrington Park, 90 F. Supp.2d 557, 565 (D. N.J. 2000) (holding that a call failure rate of five to seven percent is a significant gap). The statement in Penn Township that proof of a relevant gap in service requires a provider "to include evidence that the area the new facility will serve is not already served by another provider," is somewhat puzzling in light of the preceding statement pertaining to a provider's proof that its facility will fill an existing significant gap in the ability of remote users to access the national telephone network. Standing alone, evidence that an area "is not already served by another provider" would seem to prohibit any provider from serving an area already served by another provider. It would promote monopolization and thus conflict with the pro-competitive objectives of the TCA. Because Penn Township relied heavily on "the most thoughtful discussion [it] found in the recent opinion" in Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630 (2d Cir. 1999), we turn to that opinion for illumination.

The Willoth court described as "untenable" the proposition that "once personal wireless servers are available somewhere within the jurisdiction of a state or local government . . . the state or local government could deny any further application with impunity." Id. at 641. Thus, the court did not intend to foreclose proof of a significant gap in service because of the mere presence of

one or more telecommunication providers in the jurisdiction. The puzzling Penn Township statement -- evidence that the area served by the new facility "is not already served by another provider" -- can only refer to an area without any significant gap in service by an existing provider.

Any other interpretation effectively would allow the existence of older, less functional cellular networks to impede the development of new, digital technologies like PCS and undermine competition in the telecommunications industry, thereby impairing Congressional policy. That policy, as expressed in TCA, seeks to create a "pro-competitive, de-regulatory national policy framework

designed to rapidly accelerate private sector deployment of advanced telecommunication and information technologies and services to all Americans by opening all telecommunications markets to competition." H.R. Conf. Rep. No. 104-458, at 113 (1996), reprinted in 1996 U.S.C.C.A.N. 124.

Therefore, this case will be remanded to the Magistrate Judge for reconsideration under the legal standard set forth in this opinion.[10]

III.

The Magistrate Judge found as a fact that Omnipoint's stealth flagpole was the least intrusive of the possible alternatives. See 189 F. Supp.2d at 262. We do not disturb this finding because it is not "clearly erroneous." See Warner-Lambert Co., 204 F.3d at 89 n.1. The Township cites the ZHB's original findings that Omnipoint considered few other sites and approached a horse farmer but did not follow up. ZHB's brief also criticizes Omnipoint for not engaging in studies to assess the visual and auditory impact of the flagpoles on the neighboring properties.

Magistrate Judge Hart found that the horse farmer was not interested in leasing the property and that Omnipoint considered other sites but did not choose them because Omnipoint was involved in unrelated litigation with the owners. See 129 F. Supp.2d at 262-63.[11] Thus, the MJ's finding that the stealth flagpole was the least restrictive

---

10. We are not persuaded by other evidence provided by Omnipoint to show a significant gap. The MJ held that Omnipoint's expert witness Dugan had failed to establish a correlation between the negative 85 dBm standard and users' actual ability to access the national telephone network. Dugan's own tests revealed that cell phone users in the area below negative 85 dBm nevertheless were able to make and receive calls using non-Omnipoint networks. See 189 F. Supp.2d at 264. We agree with the MJ's finding that Omnipoint did not carry its burden of showing that a signal strength of less than negative 85 dBm alone proves a significant gap. Dugan argued that the active portion of one of the tests

that he conducted understates the problem with the services' reliability in that area. Omnipoint was responsible for correcting this proof problem by more closely replicating actual driving habits and equipment. See 189 F. Supp.2d at 264 n.4.

11. Moreover, the MJ could reasonably have concluded that a tower in the business district would not have remedied Omnipoint's gap because Omnipoint explained that the maximum coverage of its technology's cell sites in the Township is two miles.

alternative is not clearly erroneous.

IV.

In Pennsylvania, a land use restriction is a valid exercise of a municipality's police power when it promotes public health, safety, and welfare and is substantially related to the purpose it purports to serve. See Kirk v. Zoning Hearing Bd. of Honey Brook, 713 A.2d 1226, 1229 (Pa. Commw. 1998). A zoning ordinance is presumed valid and a party challenging it has a heavy burden of proving its invalidity. See Penn Township, 196 F.3d at 475. This presumption can be overcome by proof that the ordinance totally excludes an otherwise legitimate use. See Farrell v. Worcester Township Bd. of Supervisors, 481 A.2d 986, 989 (Pa. Commw. Ct. 1984).12 Exclusionary ordinances take two forms: de jure and de facto. De jure exclusion exists where "the ordinance, on its face, totally bans a legitimate use." Id. De facto exclusion exists "where an ordinance permits a use on its face, but when applied acts to prohibit the use throughout the municipality." Id.13 The MJ held that Easttown

_____

12. A party seeking a use variance must show that the zoning restriction "inflicts unnecessary hardship on the applicant," and: (1) that there are unique physical circumstances or conditions peculiar to the property that create the hardship; (2) that because of these circumstances or conditions, there is no possibility that the property can be developed in conformity with the zoning ordinance; (3) that the applicant did not create the unnecessary hardship; (4) that the variance, if granted, would not alter the essential character of the area; and (5) that the variance, if granted, would represent the least modification possible to the regulation at issue. 53 P.S. S 10910.2 (2002).

13. Exclusionary impact can invalidate an ordinance without evidence of exclusionary intent. Overstreet v. Zoning Hearing Bd. of Schuylkill Township, 618 A.2d 1108, 1113 (Pa. Commonw. Ct. 1992). If a party rebuts the presumption of constitutionality by presenting sufficient evidence that an ordinance is exclusionary, the burden then shifts to the state to demonstrate that the zoning ordinance bears a substantial relationship to public health, safety and welfare. Id.; see also Exton Quarries, Inc. v. Zoning Bd. of Adjustment of W. Whiteland Township, 228 A.2d 169, 179 (Pa. 1967) ("[A] zoning ordinance which totally excludes a particular business from an entire municipality must bear a more substantial relationship to the public health, safety, morals and general welfare than an ordinance which merely confines that business to a certain area in the municipality.").

Township Ordinance 160-80 was neither de jure nor de facto exclusionary. We agree.

The ordinance is not facially exclusionary. As interpreted, it does not totally ban a legitimate use. Although the ordinance did not explicitly provide for telecommunications towers, the ZHB twice granted variances for telecommunications towers in the business district under a catch-all provision. 189 F. Supp.2d at 266. Omnipoint argues that a telecommunications tower does not fall within the catch-all provision because it is not of the same "general character" as any of the enumerated uses. However, the ZHB's interpretation of a municipality's zoning ordinance is entitled to weight because it reflects the construction of a statute by an entity charged with its execution and application. See Sprint Spectrum v. Zoning Hearing Bd. of Mahoning Township, 46 Pa. D. & C.4th 187, 192 (Carbon County CCP 2000). Furthermore, simply because an ordinance does not expressly permit a use does not necessarily mean that it negates that use. Cf. APT Pittsburgh Ltd. P'ship v. Lower Yoder Township, 111 F. Supp.2d 664, 670 (W.D. Pa. 2000). Otherwise, the TCA would force localities to enshrine every change in the telecommunications industry into local ordinances at an unrealistically rapid rate. See id.

The ordinance was not de facto exclusionary either. Omnipoint argues that the height restrictions contained in the zoning ordinance effectively prohibit the establishment of functional telecommunication facilities in Easttown Township. The ordinance contained a thirty-five foot height restriction in residential areas and a fifty-foot height restriction in business districts. See 189 F. Supp.2d at 267. The Magistrate Judge rejected this argument because the ZHB had previously granted height variances for communications facilities. Id. at 268; see also Penn Township, 196 F.3d at 476 (explaining that "to succeed in its exclusionary zoning claim . . . [the Plaintiff] had to prove that no other telecommunications provider, including itself, could build a functional tower . . .").14

---

14. Omnipoint argues that Easttown Township cannot circumvent an otherwise exclusionary zoning ordinance by relying on the availability of

11

Omnipoint's alternative argument under the "fair share" principle also fails. The "fair share" principle applies when an ordinance only partially excludes a land use. An ordinance is exclusionary when a municipality fails to provide for its "fair share" of a legitimate land use such as multi-family dwellings. See Surrick v. Zoning Hearing Bd. of the Township of Upper Providence, 382 A.2d 105 (Pa. 1977). Local political units must plan for and provide land-use regulations that meet the legitimate needs of all categories of people who may desire to live within its boundaries. See

id. at 108.[15]

Omnipoint contends that Easttown Township fails to provide a "fair share" allowance for telecommunications uses. The B-Business District comprises only 1.1% of the total area of Easttown Township.[16] The relevant inquiry is whether Omnipoint has carried its "heavy burden" of showing that the needs of the community's residents are not being adequately served. See Montgomery Crossing Assoc. v. Township of Lower Gwynedd, 758 A.2d 285, 289 (Pa. Cmwlth. Ct. 2000); Schubach v. Silver, 336 A.2d 328,

_____

a variance because of the high hurdles applicants must normally face to obtain a variance. Cf. Girsh Appeal, 263 A.2d 395 (Pa. 1970). This argument has greater force when plaintiffs seek a use variance, as in Girsh Appeal, rather than a height variance. See 189 F. Supp.2d at 268. A use variance is more burdensome to obtain than a height variance. Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh, 721 A.2d 43, 47 (Pa. 1998). Although Omnipoint sought both a use and a height variance, its argument that the ordinance is de facto exclusionary necessarily focuses on the ordinance's height restrictions. Thus, the MJ properly rejected this argument.

15. In Surrick, the Pennsylvania Supreme Court articulated several factors to be considered in applying the "fair share" principle in the housing context: (1) whether the area is a logical area for development and population growth; (2) the present level of development; (3) population density data; (4) the percentage of total undeveloped land; and (5) the percentage of undeveloped land available for development. See Surrick, 382 A.2d at 110.

16. The Township contests this finding and argues that the business district is larger than Omnipoint asserted it was at trial. However, the MJ adopted the 1.1% figure as a fact, see 189 F. Supp.2d at 269, and this finding is not clearly erroneous.

12

335 (Pa. 1975). Other telecommunications providers have been able to serve the needs of their customers by placing towers within the business district. To overcome the presumption that the ordinance is constitutional, Omnipoint would have had to show a causal link between the small area of land zoned for business use and the community residents' inability to meet their needs. This, it failed to do.

V.

In its original complaint, Omnipoint alleged that ZHB's denial of Omnipoint's application constituted a violation of 47 U.S.C. S 332(c)(7)(B)(i)(I) because ZHB unreasonably discriminated against "providers of functionally equivalent services." Judge Katz denied this claim on the ground that Omnipoint had not shown discrimination, reasonable or otherwise. See 72 F. Supp.2d at 515 n.3. In its cross-appeal of Judge Katz's decision, Omnipoint did not include the court's finding on the discrimination issue. Omnipoint I,

248 F.3d at 103. The MJ ruled that this discrimination issue was not properly before him because it had not been presented to the panel on the first appeal. See 189 F. Supp.2d at 270.

Omnipoint argues that a cross-appeal is only required when the appellee advances an issue on appeal that aspires to alter the trial court's decision. Cf. New Castle County v. Hartford Accident & Indem. Co., 933 F.2d 1162, 1205 (3d Cir. 1991). Appellee is free to assert any alternative theory in support of the District Court's decision, even without a formal cross-appeal. See id.; see also Scott v. Univ. of Delaware, 601 F.2d 76, 91-92 (3d Cir. 1979) (Adams, J., concurring).

The discrimination issue is properly before us and we now reject Omnipoint's argument on the merits. The TCA prohibits unreasonable discrimination against "providers of functionally equivalent services." 47 U.S.C. S 332(c)(7)(B)(i)(I). The TCA does not prohibit all discrimination against providers, only unreasonable discrimination. See AT & T Wireless PCS v. Virginia Beach, 155 F.3d 423, 427 (4th Cir. 1998).

13

In Nextel, we explained that the purpose of the "unreasonable discrimination" language ofS 332(7)(B)(i)(I) is to ensure that once the municipality allows the first wireless provider to enter, the municipality may not unreasonably exclude subsequent providers who similarly wish to enter and create a competitive market in telecommunications services. See Nextel, 282 F.3d at 264 n.6. Nextel creates a two-part test for determining if a zoning board has unreasonably discriminated. First, the plaintiff must show that the relevant providers are functionally equivalent. Second, the plaintiff must show that the government body unreasonably discriminated. Id. at 266.

The equivalency of function relates to the telecommunications services the entity provides rather than to the technical particularities of its operations. See id. at 266 n.13. We hold that Omnipoint is functionally equivalent to the other telecommunications providers that were granted variances in Easttown Township.

Omnipoint's discrimination claim fails under the second part of the test. Permitting the erection of a communications tower in a business district does not compel the ZHB to permit a similar tower at a later date in a residential district. See Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 639 (2d Cir. 1999); see also H.R. Conf. Rep. 104-458, at 208, reprinted in 1996 U.S.C.C.A.N. at 222 ("the conferees do not intend that if a State or local government grants a permit in a commercial district, it must also grant a permit for a competitor's 50-foot tower in a residential district"). The two communications towers that existed in Easttown at the time of Omnipoint's application

were both located in areas zoned for business rather than residential use. See 72 F. Supp.2d at 515 n.3. Thus, the ZHB's denial was not unreasonable and Omnipoint's S 332(c)(7)(B)(i)(I) challenge fails.17

_____

17. Omnipoint's argument to the contrary focuses on the ugliness of the monopole previously approved by the ZHB for placement at the Berwyn Fire Company and the relative ease with which a variance was granted in that case. Even if the Berwyn Fire Company monopole is uglier than the proposed Omnipoint structure, that does not alter Omnipoint's

14

VI.

Omnipoint dedicates a significant portion of its brief to a direct attack on Penn Township. It points to the TCA, which seeks to create a "pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunication and information technologies and services to all Americans by opening all telecommunications markets to competition." H.R. Conf. Rep. No. 104-458, at 113 (1996), reprinted in 1996 U.S.C.C.A.N. 124; see also Nextel, 282 F.3d at 264 n.6. Omnipoint argues that Penn Township undermines Congress' purpose of creating a competitive market for telecommunications services and has the effect of privileging first entrants with antiquated technology over subsequent entrants who could promote consumer welfare by creating competition and offering superior services. We decline to address this question because a panel cannot overrule existing Third Circuit precedent. See  3d Cir. Internal Operating Proc. 9.1.

VII.

Accordingly, the Magistrate Judge's order granting summary judgment for the ZHB is affirmed except as to its holding that there is no significant gap in telecommunications service in Easttown Township. As to

_____

intention to place its PCS tower in an area zoned for residential use. Furthermore, Omnipoint contests the ZHB's finding that the proposed flagpole would be a "blight" that would "loom over residential communities." Our role "is not to weigh the evidence contained in the record or substitute [our] own conclusions for those of the fact finder," but rather "to determine whether there is substantial evidence in the record as a whole to support the challenged decision." Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus, 197 F.3d 64, 71 (3d Cir. 1999); Omnipoint I, 248 F.3d at 106. Many community residents objected after seeing the plans and Omnipoint's land planning expert conceded that the tower would be "taller than most I have seen" in a residential area. ZHB Decision, A 670. The ZHB and the MJ both found that the 110-foot flagpole would be a blight that would loom over the residential community. This finding was supported by substantial evidence.

this holding, we remand to the Magistrate Judge for further proceedings consistent with this opinion. Two-thirds of the costs are taxed against the appellant.

SLOVITER, Circuit Judge, Concurring:

I have reservations that the majority's decision remanding so that evidence of problems faced by Omnipoint users may be included in the determination whether there is a significant gap may not be consistent with our holding in APT Pittsburgh Ltd. v. Penn Township, 196 F.3d 469 (3d Cir. 1999). If every licensee who seeks to construct a communications tower were able to compel recalculation of the evidence as to the availability of wireless communications services to remote users because its users have a dead spot in communications, the Township Zoning Boards may receive numerous such requests for a new study which may entail additional time and expense. Moreover, the residential areas may be populated by unsightly towers, however disguised. This situation was addressed by the Penn Township court as follows:

> [I]t is necessary for the provider to show more than that it was denied an opportunity to fill a gap in its service system. In order to show a violation of subsection 332(c)(7)(B)(i)(II) under Willoth, an unsuccessful provider applicant must show two things. First, the provider must show that its facility will fill an existing significant gap in the ability of remote users to access the national telephone network. In this context, the relevant gap, if any, is a gap in the service available to remote users. Not all gaps in a particular provider's service will involve a gap in the service available to remote users. The provider's showing on this issue will thus have to include evidence that the area the new facility will serve is not already served by another provider.

> Second, the provider applicant must also show that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve. This will require a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc.

Id. at 480 (emphasis added) (footnote omitted).

Omnipoint appears to present precisely the situation encompassed by the above language in Penn Township. Moreover, the fact that Omnipoint failed to raise the issue of the gap calculation in its principal brief and reserved it for its reply brief when the Township Zoning Board did not have the opportunity to answer suggests that it was an afterthought. It is not clear whether this argument as to the gap calculation was raised before the Magistrate Judge at some time. It was not raised at the hearing and is not considered in his comprehensive opinion.

Nonetheless, I concur because it is clear from the majority's opinion that on remand the Township Zoning Board will have the opportunity to challenge Omnipoint's calculations. Under the circumstances, I urge the Magistrate Judge to give the Township ample leeway to do so.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit